IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DISNEY ENTERPRISES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AWAY DISCOUNT, et al,<br><br>Defendants. | Civil No.:07-1493 (DRD) |

**OPINION AND ORDER**

**I. PROCEDURAL HISTORY**

Pending before the Court is Plaintiffs' motion for summary judgment (Docket No. 195) against the sole remaining undefaulted Defendant in the instant case, Tienda La Unica (hereinafter "Defendant"). In the memorandum of law submitted by Plaintiffs in support of their motion (Docket No. 196), they assert entitlement to judgment as a matter of law on all their claims against Defendant. First, Plaintiffs assert that they have proven instances of trademark infringement, based upon the registrations submitted to the Court, as well as the counterfeit goods purchased and seized from Defendant. Next, Plaintiffs aver that they have proven their claim of copyright infringement, based upon their copyright registration certificates, coupled with Defendant's access to the copyrighted material and the substantial similarity of the purchased and seized merchandise to the copyrighted works. To date, the motion for summary judgment

remains unopposed.

Ultimately, Plaintiffs request that the Court grant them statutory damages for the copyright and trademark infringement claims.  Further, Plaintiffs request that the Court enter permanent injunctive relief against Defendant, order the forfeiture of the counterfeit property and discharge the bond which Plaintiffs were ordered to provide prior to entry of the preliminary injunction in the instant case.

## II. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party.  *See* Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir.1997).  The Court is not to consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record.  *See* L.Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.  The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also* A.C. Orssleff EFTF, 246 F.3d at 33 (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also* Garside v. Osco Drug, 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be

considered on a motion for summary judgment.").

The relevant facts in the instant case are brief. Plaintiffs own the exclusive rights to a number of trademarks and copyrights.[1] On June 11, 2007, Plaintiffs instituted the instant action, claiming that Defendants in the instant case were engaged in ongoing violations of Plaintiffs' copyrights and trademarks and, on July 24, 2007, the Court entered a preliminary injunction against all Defendants in the instant case, finding that Plaintiffs indeed held the relevant copyrights and trademarks and barring Defendants from engaging in any further infringing conduct.

As evidence of the alleged infringements of their copyrights, Plaintiffs submit the sworn declaration of an investigator who purchased items bearing Disney and Hello Kitty marks. As further evidence, Plaintiffs submit the inventory lists of allegedly counterfeit materials seized by the U.S. Marshall upon the Court's order. The inventories show that 11,334 items were seized by the Marshall from Defendant which

---

[1] The specific copyrights and trademarks which are relevant to the instant motion are: (1) Disney's Winnie the Pooh copyright, (2) Disney's Mickey Mouse copyright; (3) Disney's Tinker Bell copyright; (4) Disney's Tigger copyright; (5) Disney's Minnie Mouse copyright; (6) Disney's Cars copyright; (7) Disney's Disney Princess copyright; (8) Sanrio's Hello Kitty copyright; (9) Disney's Winnie the Pooh trademark; (10) Disney's Mickey Mouse trademark; (11) Disney's Tinker Bell trademark; (12) Disney's Tigger trademark; (13) Disney's Minnie Mouse trademark; (14) Disney's Cars trademark; (15) Sanrio's Hello Kitty trademark; (16) Warner Bros. Tweety trademark; (17) DC Comics' Superman trademark; (18) Nike's Nike trademark; (19) Nike's Swoosh trademark; (20) Oakley's Oakley trademark; and (21) Oakley's Stylized "O" trademark.

display copyrighted and trademarked material pertaining to Winnie the Pooh, Mickey Mouse, Tinker Bell, Tigger, Minnie Mouse, Cars, Disney Princess, Hello Kitty, Nike, Tweety, Superman, and Oakley. Plaintiffs further state under penalty of perjury that they never authorized Defendant to manufacture, sell, distribute or offer for sale any merchandise bearing Plaintiffs' trademarks or copyrighted material.

### III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see* Celotex Corp. V. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party

based on the evidence.  Id.   Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id.

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts."  Cortes-Irizarry v. Corporacion Insular, 11 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment."  Cadle Co., 116 F.3d at 959-60.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)).  Summary judgment is inappropriate where there are issues of motive and intent as related to material facts.  *See* Poller v. Columbia Broad. Sys., 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also* Pullman-Standard v. Swint, 456 U.S.

273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also* Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury "). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir.1996).

However, "[i]f the adverse party does not [file an opposition], summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e). Failure to timely oppose a motion for summary judgment, in and of itself, does not justify entry of summary judgment against a party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. U.S., 924 F.2d 355, 358 (1st Cir.1991); *see also* Lopez v. Corp. Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir.1991)(holding that, before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). Thus, a party that

fails to oppose a motion for summary judgment does so at its own peril. *See* <u>Corrada Betances v. Sea-Land Svcs., Inc.</u>, 248 F.3d 40, 43 (1st Cir.2001); *see also* <u>Herbert v. Wicklund</u>, 744 F.2d 218, 233 (1st Cir.1994). Nevertheless, even where there is no opposition to a summary judgment, the Court must entertain the motion on the merits and may not grant the motion as a sanction for failure to file an opposition. *See* <u>De la Vega v. San Juan Star</u>, 377 F.3d 111 (1st Cir.2004).

## IV. TRADEMARK INFRINGEMENT

The Trademark Act of 1946, which is better known as the Lanham Act, 15 U.S.C. §1051 *et seq*, "provides the user of a trade or service mark with the opportunity to register it" as well as the right to institute "a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" <u>KP Permanent Makeup v. Lasting Impression I, Inc.</u>, 543 U.S. 111, 117, 125 S.Ct. 542 (2004)(quoting 15 U.S.C. §1114(1)(a). Thus, trademark infringement law "exist[s] largely to protect the public from confusion anent the actual source of goods or services." <u>Int'l Assoc. of Machinists and Aerospace Workers v. Winship Green Nurs. Ctr.</u>, 103 F.3d 196, 200 (1st Cir.1996).

Where, as here, it is undisputed that an item is subject to

trademark protection,[2] "the pivotal inquiry becomes whether the allegedly infringing mark is likely to cause consumer confusion." Equine Tech., Inc. v. Equitechnology, Inc., 68 F.3d 542, 546 (1st Cir.1995)(internal quotation omitted).  In this Circuit, courts "typically consider eight factors in assessing the likelihood of confusion."  Winship, 103 F.3d at 201; *see also* Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir.1989); *see also* Equine Tech., 68 F.3d at 546.  Those eight factors are: "(1) the similarity of the marks; (2) the similarity of the goods . . .; (3) the relationship between the parties' channels of trade; (4) the juxtapositioning of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark."  Winship, 103 F.3d at 201.  These factors merely act as guides to the Court, and no single factor is determinative.  Id.  Thus, the Court's duty upon consideration of a motion for summary judgment in a trademark infringement action is to "determine whether the evidence as a whole, taken most hospitably to the [non-moving party], generates a triable issue as to likelihood of confusion."  Id.

---

[2] The Court notes that Plaintiffs have submitted the relevant trademark registrations for the Court to compare to the merchandise offered for sale by Defendant as exhibits to their statement of uncontested material facts.  *See e.g.* Keds Corp. v. Renee Int'l Trad. Corp., 888 F.2d 215, 220 (1st Cir.1989)(nothing that "[i]n general, registration creates a presumption in favor of the registrant" and that, once a mark becomes incontestible at the termination of the five year period imposed by the Lanham Act, it "is conclusive evidence of the registrant's exclusive right to use the registered mark in commerce").

**A. SIMILARITY OF MARKS AND GOODS**

Plaintiffs assert that the first two factors weigh heavily in favor of granting summary judgment as the marks on the allegedly infringing merchandise are identical to Plaintiffs' trademarks. Upon review of the trademarks submitted as exhibits to Plaintiffs' statement of uncontested material facts, as well as photographs of the merchandise purchased from Defendant and that seized by the U.S. Marshal, the Court agrees with Plaintiffs that the marks displayed on Defendant's merchandise are identical to Plaintiffs' trademarks, which they display on similar, if not identical, merchandise. Accordingly, the Court finds that these first two factors weigh extremely heavily towards a finding of likelihood of confusion. *See* VMG Enterprises, Inc. v. F. Quesada & Franco, Inc., 788 F.Supp. 648, 661 (D.P.R.1992)(noting that "where the marks and products are identical, a likelihood of confusion *must* be presumed").

**B. SIMILARITY OF CHANNELS OF TRADE, ADVERTISING AND CLASS OF PROSPECTIVE PURCHASERS**

Plaintiffs contend that the merchandise which Defendant offers for sale is in direct competition with Plaintiffs' merchandise as it is marketed and sold to the same group of retail purchasers in Puerto Rico. As a preliminary matter, the Court notes the existence of an expansive collection of legitimate, non-counterfeit consumer items which bear the

relevant trademarks in the instant case, as well as the world-wide marketing and sale of these products. The trademarks at issue are readily identifiable by a significant portion of the populations of both the United States and Puerto Rico and are associated with a wide variety of consumer items marketed and sold in Puerto Rico. Thus, the channels of trade and advertising associated with Plaintiffs' products are substantially similar, if not identical, to those associated with Defendant's consumer goods which bear copies of Plaintiffs' trademarks.

Further, because the goods sold by Defendant are identical to those manufactured and sold by Plaintiffs and authorized licensees, it is likely that the products appeal to the same class members. *See* Geoffrey, Inc. v. Toys R Us, Inc., 756 F.Supp. 661, 666 (D.P.R.1991)(finding that the "same Puerto Rican purchaser" would be interested in purchasing identical goods produced by a trademark holder and an infringer). In order to determine whether there is a likelihood of confusion among members of the class of prospective purchasers, the Court must "presume that class members are of normal intelligence." *See* Winship, 103 F.3d at 204. In the instant case, the Court finds that a class member of normal intelligence would very likely be misled by Defendant's use of Plaintiffs' trademarks as the trademarks are legally utilized by Plaintiffs on a wide variety of products with which Defendant's goods, bearing identical

trademarks, might be confused.  Thus, the Court finds that these factors also weigh towards a finding that there is a likelihood of confusion between Defendant's goods bearing the mark and Plaintiffs' goods.

### C. EVIDENCE OF ACTUAL CONFUSION

As noted by Plaintiffs, no evidence of <u>actual</u> confusion is necessary to find a likelihood of confusion.  *See* <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>, 657 F.2d 482, 491 (1st Cir.1981).  Thus, although Plaintiffs proffer no evidence showing actual confusion between the products which they manufacture, market, distribute and sell bearing their trademarks and the products bearing identical marks produced and/or sold by Defendant, such a showing is unnecessary.  Thus, this factor weighs neither for nor against a finding of likelihood of confusion.

### D. DEFENDANT'S INTENT IN ADOPTING THE MARK

Plaintiffs allege that Defendant's intention in using their marks was to benefit from the success and popularity of Plaintiffs' trademarks.  Plaintiffs base this allegation on an assertion that the use of identical marks on identical products establishes an intent to trade on Plaintiffs' good reputation and strong marks.  The Court agrees with this allegation as the facts indicate that Defendant possessed and sold items both similar and identical to products sold by Plaintiffs bearing the same marks

and sold the items through a retail outlet in Puerto Rico to the same customers targeted by Plaintiffs. *See e.g.* Boston Athletic Assn. v. Sullivan, 867 F.2d 22, 32 (1st Cir.1989)(finding that similar actions "clearly show[ed] [Defendants'] intent to trade on" Plaintiff's popularity and the strength of Plaintiff's mark). Further, the general principle that "when an alleged infringer intentionally copies a trademark, it may be presumed that [it] intended to cause confusion and profit" from "free riding on the markholder's reputation and goodwill" has not been rebutted here. *See* Winship, 103 F.3d at 206 and n.10.  Thus, the Court finds that this factor weighs in favor of a finding of likely confusion.

### E. STRENGTH OF PLAINTIFF'S MARKS

"The distinctiveness and reknown (sic) of a trademark determine its relative strength or weakness, which, in turn, defines the scope of protection to be accorded to the mark against others which are confusingly similar." Boston Athletic, 867 F.2d at 32 (quoting 3A Callaman §20.43 at 345).  In determining the relative strength of a trademark, the Court should "examine[] the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark." Equine, 68 F.3d at 547 (quoting Boston Athletic, 867 F.2d at 32)(internal quotation omitted).

In the instant case, the marks have been in use for a period of time ranging between four and thirty two years. They represent iconic classics in the trademark world, and include figureheads and logos such as Mickey Mouse, Tweety, Hello Kitty and the Nike Swoosh. These familiar trademarks are found on a wide range of products from small toiletry items to sneakers and t-shirts around the world, and their popularity is undoubtedly due in part to the efforts and expense of Plaintiffs. In fact, the Court would find it difficult to find trademarks which bear greater strength than those involved in the instant action. Thus, the Court finds that this final factor weighs heavily towards a finding of likely confusion.

**F. CONCLUSION REGARDING THE TRADEMARK INFRINGEMENT CLAIMS**

As explained above, the Court's weighing of the factors produces an extremely strong presumption for likely confusion between Defendant's counterfeit goods and Plaintiffs' goods, which bear their trademarks. Further, where, as here, the counterfeit goods and Plaintiffs' goods are substantially identical, the Court *must* find a likelihood of confusion. *See* VMG Enterprises, 788 F.Supp. at 661 (noting that "where the marks and products are identical, a likelihood of confusion *must* be presumed"). Thus, the Court can find no triable issue as to the likelihood of confusion. Accordingly, Plaintiffs have satisfied their burden of showing that no genuine issue of material fact

exists as to their trademark claims and the Court hereby **GRANTS** Plaintiffs motion for summary judgment as to these claims.

### V. COPYRIGHT INFRINGEMENT

In order to prevail on a claim of copyright infringement, "a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer." Mag Jewelry Co., Inc. v. Cherokee, Inc., 496 F.3d 108, 115 (1st Cir.2007)(citing Feist Publ'ns, Inc. v. Rural Tel. Servs. Co., 499 U.S. 340, 361, 111 S.Ct.1282 (1991)). In turn, this second element is bifurcated. Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 67 (1st Cir.2009). "First, the copyright holder must show that, as a factual matter, the putative infringer copied the protected work." Id. This first element may be proven either through direct evidence or through an inference established by "evidence that an alleged copier had access to the copyright holder's previously created design and that there is a high degree of similarity between the works." Mag Jewelry, 496 F.3d at 114-15. Then, the copyright holder "must show that the copying was so egregious as to render the allegedly infringing and infringed works substantially similar." Coquico, 562 F.3d at 67. In order to gauge substantial similarity, the Court employs an "ordinary observer" test under which "the allegedly infringing work will be deemed substantially

similar to the allegedly infringed work if an ordinary observer would be disposed to overlook any disparities in the works." Id.

### A. COPYING

Where, as here, no disputes exist as to the ownership of the copyrighted material allegedly infringed upon,[3] the Court's first inquiry is whether the copyright holder has shown that the defendant has copied the copyrighted work, through either direct or circumstantial evidence. *See* id. Here, the copyrighted items are cartoon characters, which are well-known to the American and Puerto Rican public. They are icons whose images are readily viewable in movies and television shows and on authorized merchandise. Thus, Defendant had ample access to the copyrighted characters involved in the instant suit. *See e.g.* Mag Jewelry, 496 F.3d at 117 (noting that only a "reasonable opportunity" is necessary to find access and that actual access is not necessary).

Thus, the Court's inquiry shifts to determine whether the allegedly infringing products are similar enough that the court may find "probative similarity," that is to say that "the two works are so similar that the court may infer that there was factual copying." Id. at 115 n.7 (internal quotation omitted).

---

[3] Plaintiffs have submitted their valid copyrights as exhibits to their statement of uncontested material facts. *See e.g.* 17 U.S.C. §410(c). Further, the Court has exhaustively compared the copyrighted images to the images on Defendant's products and has determined that they are identical.

Upon review of the copyrights held by Plaintiffs, as well as of the merchandise purchased and seized from Defendant, the Court is of the opinion that the works are similar within the meaning of this inquiry. The allegedly infringing works bear the readily-recognizable images of the copyrighted characters. Thus, the Court finds that this prong is met and proceeds to its final inquiry regarding substantial similarity.

### B. SUBSTANTIAL SIMILARITY

The Court has carefully reviewed the photographs of the submitted merchandise which was seized or purchased from Defendant, along with the images associated with Plaintiffs' copyrights. Upon review of the two, the Court does not observe any disparities. Moreover, even if disparities exist, they are so minute that the Court must still find that the images are all identical or near-identical and that an ordinary observer would overlook any small discrepancies between the copyrighted material and the depictions displayed on Defendant's merchandise. The images portrayed on Defendant's merchandise are readily identifiable as the characters protected by Plaintiffs' copyrights. Thus, the Court finds that Defendant's merchandise is substantially similar to the material over which Plaintiffs hold copyrights.

### F. CONCLUSION REGARDING THE COPYRIGHT INFRINGEMENT CLAIMS

For the reasons stated above, the Court finds that

Plaintiffs hold valid copyrights to the disputed material.  The Court further finds that Plaintiffs have conclusively established that Defendant had access to the copyrighted material and that substantial similarities exist between Defendant's merchandise and the copyrighted material.  Thus, the Court finds that no genuine issue of material fact exists as to Plaintiffs' copyright infringement claims and, accordingly, **GRANTS** Plaintiffs' motion for summary judgment as to these claims.

### VI. FINAL INJUNCTION AND RELEASE OF BOND

Plaintiffs request that the Court extend the preliminary injunction (Docket No. 30) entered by the Court on July 24, 2007 against Defendant preventing Defendant from engaging in any further infringing activities.  As the Court has granted Plaintiffs motion for summary judgment, conclusively finding that Defendant has indeed engaged in behavior that constituted infringement of Plaintiffs' trademarks and copyrights, it also **GRANTS** this request and extends into perpetuity the mandates against infringing behavior contained within the preliminary injunction.

Further, as Defendant Tienda La Unica represents the last active Defendant in the instant case, the Court also **GRANTS** Plaintiffs' request that the preliminary injunction bond be discharged.  As all other Defendants have either defaulted or have entered into settlement agreements with Plaintiffs, the bond

no longer serves its intended purpose of ensuring that Defendants will not be damaged if they were wrongfully enjoined at the preliminary injunction level.

## VII. DAMAGES

Plaintiffs also request that the Court enter damages for a sum falling within the statutory limits for the acts of infringement perpetrated by Defendant.  However, the evidence proffered by Plaintiffs to support this request is limited and should be further supplemented in anticipation of a potential appeal of this decision.  Further, the Court still must hold a hearing regarding damages to be attributed to Defaulting Defendants in the instant case.  Thus, acting out of an abundance of caution, the Court **DENIES** Plaintiffs' request as to damages at this time.  Rather, the Court shall hear Plaintiffs' arguments regarding damages due from Defendant Tienda La Unica at the same time as it hears Plaintiffs' arguments regarding damages due from Defaulting Defendants.  The Court encourages Plaintiffs to refer primarily to law of the First Circuit in formulating its legal arguments as to damages due and to arrive prepared to introduce evidence to support the damage awards which they request.  The **DAMAGES HEARING** is hereby set for **August 30, 2010 at 9:30 AM**. Judgment shall be entered following that hearing.

## VIII. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS**

Plaintiffs' motion for summary judgment against Defendant Tienda La Unica.  The Court further **GRANTS** Plaintiffs' request for entry of a permanent injunction against Defendant Tienda La Unica as well as Plaintiffs' request for discharge of the preliminary injunction bond in the amount of $75,000.00   The Court **DENIES** Plaintiffs' request that the Court determine damages at this time, however, and sets a hearing regarding damages pertaining to Defendant Tienda La Unica, as well as Defaulting Defendants, for **AUGUST 30, 2010** at **9:30 AM**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of August, 2010.

                                              S/ DANIEL R. DOMINGUEZ
                                              DANIEL R. DOMINGUEZ
                                              U.S. District Judge